# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL V. PELLICANO,** | : | **CIVIL NO. 3:11-CV-405** |
| | : | |
| **Plaintiff,** | : | **(Judge Slomsky)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **OFFICE OF PERSONNEL** | : | |
| **MANAGEMENT, INSURANCE** | : | |
| **OPERATIONS,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

This is a *pro se* civil action brought by Michael Pellicano, an enrollee in a health benefits plan for federal employees, under the Federal Employees Health Benefits Act, (FEHBA), 5 U.S.C. §8901, *et seq*. The plaintiff's civil complaint in this action details a course of events beginning in 2008, during which Mr. Pellicano endeavored to secure approval from his health benefit plan to cover expenses associated with the acquisition of durable medical equipment. (Doc. 1) Ultimately, Mr. Pellicano received a partially favorable resolution of this dispute, since it appears that 65% of the cost of this equipment was reimbursed for Pellicano by his health insurer, but Pellicano's request for 100% reimbursement for the cost of this equipment

was denied, a coverage denial which was ultimately affirmed by the Office of Personnel Management (OPM) which oversees claims disputes under federal employee health benefit plans. After detailing these experiences, Mr. Pellicano's complaint named the Office of Personnel Management, an agency of the United States government, as a defendant and sought reimbursement of $7,243.95 in benefits, representing the unpaid 35% portion of this insurance claim, alleging that the denial of these benefits under FEHBA by OPM was "arbitrary and capricious" . (Doc. 1)

As part of this litigation, we previously granted OPM's request for a remand of this matter, in order to allow OPM to review any internal policy that the local Blue Cross Blue Shield plan had in place that governed calculation of payment of Pellicano's insurance claim, and to permit OPM to seek further clarification from the carrier regarding several explanations of benefits that the plaintiff submitted with his appeal, documents which he claims establish that other enrollees were fully compensated for the purchase of the same type of durable medical equipment.

Upon remand, OPM reaffirmed its initial decision upholding the reimbursement of only 65% of this durable medical equipment expense for Mr. Pellicano. The parties then submitted the entire OPM administrative record, which totals more than 1,000 pages, to the court for its review, (Doc. 54), along with competing motions for summary judgment seeking judgment as a matter of law on the issue of whether OPM

approval of this partially favorable payment decision, which resulted in reimbursement of 65% of this durable medical equipment expense, was arbitrary and capricious. (Docs. 61-65) These cross motions for summary judgment have been fully briefed, (Docs 64 and 65), and are ripe for resolution.

For the reasons set forth below, upon consideration of the record, we find that while the insurance process experienced by Pellicano entailed many detours and frustrations, the final decision of this insurance carrier, which was affirmed by OPM, to reimburse the plaintiff for 65% of this particular medical expense was not arbitrary and capricious. Therefore, we recommend that the Court enter judgment in favor of the defendant in this matter.

With respect to this dispute the pertinent facts are as follows:[1] The plaintiff, Mr. Pellicano, was an enrollee in the Service Benefit Plan (SBP), an federal employee health care benefit plan overseen by OPM under the Federal Employee Health Benefit Act, (FEHBA) 5 U.S.C. §8901. (Doc. 54, OPM admin. Record, pp.1-1124) Sometime in 2008, Pellicano filed a prior approval request with the local Blue Cross Blue Shield

---

[1] This statement of facts is derived, in part, from the statement of undisputed material facts tendered by the defendants, (Doc. 63), to the extent that those facts have been found to be fully supported by the agency administrative record. (Doc. 54) Mr. Pellicano has not disputed the accuracy of this statement of facts, and therefore pursuant to Local Rule 56.1 is deemed to admit these facts. Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007)

(BCBS) Plan administering his benefit plan in Pennsylvania, Pennsylvania Blue Cross Blue Shield. In this request, Pellicano sought full reimbursement for payment of a specific piece of durable medical equipment, a device called a Functional Electrical Stimulation (FES) cycle ergonometer. (Id., p. 44,71-74.)

This request then set in motion a protracted journey through various health care bureaucracies. At the outset, upon receipt of Pellicano's request the local Pennsylvania Blue Cross Blue Shield Plan determined that the provider for this particular piece of durable medical equipment was located in Baltimore, Maryland. Accordingly, Pennsylvania Blue Cross Blue Shield advised Pellicano to submit a prior approval request to CareFirst BlueCross BlueShield (CareFirst), which was responsible for such requests in Maryland. (Id.) Pellicano followed this direction and submitted a request for prior approval with CareFirst, which initially denied the claim as non-covered on January 26, 2009. (Id., p. 65.)

M+r. Pellicano challenged this coverage determination in a letter dated March 6, 2009, and requested reconsideration of the carrier's denial of the claim. (Id., pp. 55-57.) One month later, on April 7, 2009, CareFirst responded to Pellicano's request. In this response CareFirst explained that the claim had been processed with an incorrect rejection code, stated that Medicare was Pellicano's primary insurer, informed Pellicano that his federal benefit plan provided secondary coverage, and advised Pellicano that "[y]ou must submit a claim for this charge to Medicare. After Medicare

has paid, please send your claim for benefits to your Local Blue Cross and Blue Shield Plan or the Plan serving the area where the services were rendered."(Id. pp.58.)

Thus, CareFirst's April 2009 response directed Pellicano to take another bureaucratic journey:  Specifically, to secure reimbursement Pellicano was required to first file an appeal with Medicare.  If his appeal was denied by Medicare he was then permitted to appeal to the Blue Cross Blue Shield carrier as a secondary health insurer.  (Id.)  CareFirst then completed the bureaucratic process of addressing Pellicano's initial claim by reprocessing the claim under a new claim number and denying the claim for the correct reason.  (Id., p. 66.)

Undeterred, Pellicano launched two parallel efforts to secure reimbursement of this medical expense. First, on or about July 6, 2009, Pellicano sought reconsideration of the denial of this claim. (Id., p.59.) In addition, Pellicano attempted to comply with the directions he received from CareFirst that he exhaust any claims first through Medicare, by submitting a Medicare denial benefit statement and Medicare appeal denial letter indicating that Medicare denied the claim for the this durable medical equipment. (Id., pp. 59-63.)  This Medicare appeal decision found that the Functional Electrical Stimulation (FES) cycle ergometer was not covered by Medicare because "the motorized cycle system [he] purchased is categorized as exercise equipment. Medicare does not provide reimbursement for equipment that is not primarily medical in nature." (Id., p. 61.)

On September 23, 2009, after considering information submitted by Pellicano and receiving requested medical documentation from Pellicano's medical providers, CareFirst issued its decision on reconsideration finding that the Functional Electrical Stimulation (FES) cycle ergonometer met the criteria for covered durable medical equipment and was medically necessary for Pellicano's condition. (Id., pp. 2-4.) Accordingly, Pellicano was informed that the claim was found to be reimbursable but was advised that CareFirst would only pay the claim using 65% of the billed charge as the Plan allowance. (Id., p. 4.) This letter also stated that a check had been issued to Pellicano in the amount of $13,435.05 -- 65% of the billed amount -- and that Pellicano's total responsibility for the claim was $20,697.00. ( Id.)

Dissatisfied with this decision, Pellicano filed an appeal of this decision with OPM on December 2, 2009. (Id., pp. 1-16.) In this appeal, Pellicano challenged the amount that was paid on the claim, specifically, disputing the decision to allow reimbursement of only 65% of this equipment expense. (Id.) On appeal, Pellicano raised a twofold claim, arguing first that nothing in the health benefit plan justified a reduced 65% reimbursement rate for this expense. In addition, Pellicano provided redacted copies of two other redacted Explanation of Benefit (EOB) forms which appeared to have approved full reimbursement of similar devices in the past. (Id., pp.10, 12.) According to these copies, it appeared that the billed charge amount was the amount used as the Plan allowance, although the Explanations of Benefits letters

did not reflect precisely what services or supplies were at issue on those specific claims. Nor did the forms explain the nature of the claimant's medical justification for this equipment. (Id.)

On December 29, 2009, the CareFirst, in turn, provided OPM with an Explanation of Denial Report (EOD Report), explaining the history of this particular denied claim. (Id., pp. 43-48.) In this report, CareFirst explained that "[t]he Plan does not have an established allowance for the FES cycle ergometer and, a Medicare allowance was not available. Therefore, the default Medicare allowance was 60% of the billed charges. The Local Plan policy is to allow 65% of the charges, in the absence of an established allowance." (Id., p. 46.)

Having received this information from the carrier, on February 22, 2010, OPM issued a final agency decision which upheld the carrier's actions. (Id., p. 225.) In this decision OPM explained that the applicable provisions in the 2008 plan brochure relating to Mr. Pellicano contained a formula for calculating the Plan allowance that applied to physicians and other health care professionals that do not contract with the local Blue Cross Blue Shield Plan. This provision stated that the non-participating provider allowance generally is equal to "the greater of 1) the Medicare participating fee schedule amount for the service or supply in the geographic area in which it was performed or obtained (or 60% of the billed charge if there is no equivalent Medicare fee schedule amount) or 2) 100% of the 2008 Usual, Customary and Reasonable

(UCR) amount for the service or supply in the geographic area in which it was performed or obtained." (Id., p 1085.) However, according to OPM's February 2010 decision, "[t]here is not a [usual, customary and reasonable payment amount] UCR or Medicare fee schedule amount for the DME in question." Therefore, in the absence of either a set Medicare fee schedule or a usual, customary and reasonable payment amount for this particular equipment, OPM concluded that "CareFirst . . . policy is to provide benefits at 65 percent of the billed amount, when there is no established allowance." (Id., p. 225.)

OPM also addressed Mr. Pellicano's claims that the Plan brochure supported the use of 100 % of the billed amount as the Plan allowance and his assertion that other plan members had received full reimbursement for similar equipment by explaining that "[t]here is not a UCR [usual, customary and reasonable payment schedule] or Medicare fee schedule amount for the DME in question. Therefore, the Plan provided benefits as indicated above. Also we cannot direct the Plan to provide benefits based on information that you submitted of other BCBS enrollees. Our decision is based solely on the Plan's contract and its application to your disputed claim." (Id.)

Following the filing of this lawsuit, at OPM's request we remanded this matter to the agency for further consideration and fact-finding. On remand, OPM sought an additional report from the carrier, (id., pp. 1098-1100), and invited Mr. Pellicano to

submit information relating to the issues on remand. Mr. Pellicano declined this request, (id., pp.1106-07), but CareFirst provided additional documentation which explained that:

> The Plan does not have a UCR for the FES cycle ergometer because it is considered to be exercise equipment and is therefore a non-covered item as described in the Service Benefit Plan brochure. When situations arise through the disputed claims process and individual consideration is given, the Plan must price the claim on an Individual Consideration (IC) basis, meaning local Plan policies determine, based on claims processing guidelines, the allowance for an item that is an exclusion of the policy; this is called IC pricing. For the 2008 benefit period IC pricing was 65% of the billed amount of a provider's service. Because the provider is non-participating with the Plan, this amount was then compared to the Medicare Fee Schedule, or 60% of the billed amount in the absence of a Medicare Fee Schedule amount. For the item in dispute, there is no Medicare Fee Schedule amount, because they also consider this a non-covered item. Therefore, within the non-participating provider allowance guidelines, 65% of the billed amount is greater than 60% of the billed amount. Thus the Plan utilized 65% of the billed amount for processing purposes. A copy of the Plan's policy for 2008 IC Pricing has been included.

(Id., pp.1112-1113.)

With respect to the redacted Explanation of Benefit forms submitted with Pellicano's appeal, the CareFirst explained that:

> It is not possible for the Plan to determine whether the other Explanations of Benefits (EOBs) referenced by the member, one for services in 2008 and one for services in 2006, for other members were for the same type of DME. Without the member identification numbers and/or claim numbers we cannot make this determination. In addition, if the equipment is the same reimbursement was made in error and allowing the charges at 100% of the billed amount was done in error and was not in accordance with the IC pricing policies for 2008.

(Id., p.1113.)

The carrier also provided OPM a copy of the referenced Plan policy for 2008 Individual Consideration (IC) pricing, which stated that for durable medical equipment acquired prior to 2011, "the allowance for the procedure code should be 65% of the charge ...." (Id., pp. 1116-1117.)

On July 24, 2012, OPM issued a revised final agency decision in this matter, reaffirming its prior decision that the carrier correctly used 65% of the billed charge as the payment for the durable medical equipment in question. (Id., pp. 1119-1124.)

In its July 2012 decision, OPM explained that:

> The Plan does not have an established UCR for the FES cycle ergometer because it is non-covered exercise equipment. When these cases are disputed, and individual consideration is given, the Plan prices the claim on an Individual Consideration (IC) basis using the CareFirst Plan's policy for determining the allowance. For 2008, the IC pricing was 65% of the charge, or $13,453.05. This pricing policy was effective since 2002, until it was revised for 2011. This amount was compared to 60% of the billed charge, or $12,418.20, since there is no Medicare Fee Schedule MFS amount for the equipment, to determine the NPA. Based on this comparison, the NPA was 65% of the billed charge since it is greater than 60%. The Plan provided benefits at 100% of the NPA, instead of 75%, because the coinsurance is waived when Medicare Part B is the primary payer as indicated on page 111 of the BCBS Service Benefit Plan brochure. You are responsible for the difference between the Plan allowance and billed amount as indicated on page 43 of the 2008 brochure. Copies of the applicable 2008 BCBS brochure pages are enclosed.

(Id.)

The OPM July 2012 decision letter went on to address Pellicano's contention that other plan members had received full reimbursement of these expenses, stating:

> The CareFirst Plan indicated it is not possible to determine whether the 2006 and 2008 claims for other members were for the same type of equipment. The CareFirst Plan could not make the determination without member identification numbers and/or claim numbers. Additionally, if the equipment is the same, the payment of 100% of the billed charge was made in error and was not in accordance with the Care first Plan's IC pricing policy for 2008.

(Id., pp. 1119-1120.)

It is this decision which we must now assess to determine whether the agency's action is arbitrary and capricious.

## II.    Discussion

### A.    Rule 56–The Legal Standard

The parties have filed motions, in the nature for cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010

U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the

nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Further, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## B. OPM is Entitled to Judgment in its Favor because Pellicano Has Not Shown that the Agency's Actions Were Arbitrary or Capricious

In this case the plaintiff, Michael Pellicano, seeks judicial review of a health benefit denial decision made by the Office of Personnel Management under the Federal Employee Health Benefit Act, (FEHBA) 5 U.S.C. §8901. FEHBA is a federal law governing health benefits claims made by and for federal employees. In enacting FEHBA, Congress preempted many of the legal claims which program enrollees like Mr. Pellicano might wish to pursue, providing instead that for federal health benefit program enrollees: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902 (m)(1).

The Supreme Court has aptly described the background, scope and rationale for this preemption rule in federal employee health benefit enrollee and provider disputes in the following terms:

> Under the Federal Employees Health Benefits Act of 1959 (FEHBA), the Office of Personnel Management (OPM) negotiates and regulates health-benefits plans for federal employees. See 5 U.S.C. § 8902(a).  FEHBA provides for Government payment of about 75% of health-plan premiums, and for enrollee payment of the rest. § 8906(b).  Premiums thus shared are deposited in a special Treasury Fund, from which carriers draw to pay for covered benefits, § 8909(a).  FEHBA has a preemption provision which provides:  "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law ... which relates to health insurance or plans." § 8902(m)(1). . . .  FEHBA's . . . jurisdictional provision vests federal district courts with "original jurisdiction ... of a civil action or claim against the United States." § 8912. [and] an OPM regulation channels disputes over coverage or benefits into federal court by designating OPM the sole defendant, see 5 CFR § 890.107(c) . . . ."

Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 677 (2006).

The implementing regulations governing FEHBA health benefit plans, in turn, provide for adjudication of disputes between enrollees and health care benefit carriers by OPM, 5 C.F.R. §890.105, and permit aggrieved enrollees to bring civil actions in federal court, but provide that OPM is the sole defendant in these civil actions. 5 C.F.R. § 890.107(c).  Those regulations further state that the scope of judicial review in such an action, "will be limited to the record that was before OPM when it rendered

its decision affirming the carrier's denial of benefits," 5 C.F.R. § 890.107(d)(1), and the assert that relief which may be afforded to a plaintiff shall "be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107(c).

Judicial review of OPM's health benefit denial decisions under the Federal Employee Health Benefit Act, (FEHBA) 5 U.S.C. §8901 is governed by the Administrative Procedure Act (APA). 5 U.S.C. § 706(2)(A). Under the APA, this judicial review is limited to determining whether the agency's actions were arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. See e.g., Caudill v. Blue Cross and Blue Shield of North Carolina, 999 F.2d 74, 80 (4th Cir. 1993); Harris v. Mutual of Omaha Cos., 992 F.2d 706, 712 (7th Cir. 1993); Bolden v. Blue Cross & Blue Shield Ass'n, 848 F.2d 201, 203 (D.C. Cir. 1988); Tackitt v. Prudential Ins. Co. of Am., 758 F.2d 1572, 1575 (11th Cir. 1985). "A finding that the agency's action is arbitrary and capricious would require the court to find that there is no rational basis for the decision." Reger v. Espy, 836 F. Supp. 869, 871 (N.D. Ga. 1993). Thus, Pellicano faces an exacting burden of proof and persuasion when he invites us to find OPM's actions in this case to be arbitrary or capricious, and we note that such claims, while frequently made, are rarely embraced by the courts. See e.g., Weight Loss Healthcare Centers of Am., Inc. v. Office of Pers. Mgmt., 655 F.3d 1202, 1207 (10th Cir. 2011)("Not surprisingly, under arbitrary-and-

capricious review we will not endorse an OPM interpretation if it is arbitrary or capricious"); Muratore v. U.S. Office of Pers. Mgmt., 222 F.3d 918, 924 (11th Cir. 2000)(OPM did not act arbitrarily or capriciously when it determined that the specific provision for speech therapy in the medical benefits section); Gates v. King, 129 F.3d 1259 (4th Cir. 1997); Reger v. Espy, 836 F. Supp. 869, 871 (N.D. Ga. 1993). Applying this deferential standard or review, when it has been found that when OPM based its affirmance of a Plan's denial of coverage in part on the language in the Plan's brochure, and documents submitted by the Plan, this agency action has not been considered either arbitrary or capricious, and OPM's coverage decision has been affirmed. See Gates v. King, 129 F.3d 1259 (4th Cir. 1997).

Judged against these standards, we find that Pellicano has not shown the requisite degree of arbitrariness to justify setting aide OPM's judgment. In this case, OPM was presented with an insurance coverage and reimbursement dispute, where coverage for the requested equipment, and appropriate reimbursement rates for the equipment, were unclear. Further, the resolution of this dispute required the carrier, and OPM, to consider the interplay of different rules, policies and procedures, as well as ascertaining the relationship between insurance and Medicare coverage for this particular equipment.

Cast against the backdrop of this complex coverage dispute, the coverage and reimbursement decision made by the carrier, and affirmed by OPM, was a reasonable one. That interpretation found that the equipment was covered under Pellicano's policy, but concluded that this particular equipment was not described by Medicare fee schedules, and had no generally recognized usual, customary and reasonable rate of reimbursement. In the absence of one of these recognized and settled reimbursement schedules, it was the Plan's practice to reimburse only 65% of an expense. However, this reimbursement decision was also largely favorable for Pellicano, since it authorized reimbursement of 65% of the costs of this equipment. While Pellicano has presented a second, plausible interpretation of these rules which would have allowed for full reimbursement of this durable medical equipment expense as a usual, customary and reasonable expense, in order to prevail in this lawsuit Pellicano must do more than show that OPM's decision involved a choice between two competing, plausible interpretations of an insurance policy. To prevail Pellicano must show that the choice made by OPM was arbitrary or capricious, a legal standard which "would require the court to find that there is no rational basis for the decision." Reger v. Espy, 836 F. Supp. 869, 871 (N.D. Ga. 1993). Since Pellicano's textual argument does not demonstrate that OPM's decision was irrational, this claim fails.

Pellicano's second argument, that similar equipment requests had been fully reimbursed in the past, gives us greater pause since the disparate treatment of identical

claims could create an inference of arbitrariness. However, upon reflection, we conclude that this argument also fails since OPM reasonably concluded that it could not ascertain from the information provided by Pellicano whether these prior claims were, in fact, identical. Moreover, in a field as complex as health care administration, we also find persuasive OPM's position that the carrier cannot be forever estopped from changing a policy coverage determination, and if the carrier made an initial erroneous coverage decision, it must retain some discretion to correct that determination as it gains experience interpreting complex rules in changing circumstances. Therefore, since Pellicano has not shown that the other claims were, in fact, identical, and has not demonstrated that the prior coverage decisions on these other claims were, in fact, correct, we conclude that he has not carried his burden of proving that OPM acted irrationally, arbitrarily, or capriciously when it affirmed this partially favorable coverage decision made by Pellicano's carrier.

Yet, while we reach this result as a matter of law, we recognize the frustrations experienced by Mr. Pellicano throughout this process. However, those frustrations, while understandable, do not render the decisions made by the Plan and OPM wholly arbitrary or capricious. Since these coverage and reimbursement decisions are not arbitrary, under the law they should be sustained.

### III. **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment (Doc. 62) be GRANTED and, in light of this recommended disposition of the defendants' motion, IT IS FURTHER RECOMMENDED that the plaintiff's motion for summary judgment (Doc. 61), be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of November 2013.

_S/Martin C. Carlson_

Martin C. Carlson

United States Magistrate Judge