IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL V. PELLICANO,

                Plaintiff,

                                        CIVIL ACTION
v.                                NO. 11-405

OFFICE OF PERSONNEL MANAGEMENT,
INSURANCE OPERATIONS,

                Defendant.

## ORDER

**AND NOW**, this 25th day of March 2014, upon consideration of the Complaint (Doc.

No. 1), Plaintiff's Motion for Judgment (Doc. No. 61), Defendant's Motion to Dismiss and for

Summary Judgment (Doc. No. 62), Defendant's Statement of Facts in Support of the Motion for

Judgment (Doc. No. 63), Defendant's Brief in Opposition to Plaintiff's Motion for Judgment

(Doc. No. 64), Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss and for

Summary Judgment (Doc. No. 65), the Report and Recommendation of United States Magistrate

Judge Martin C. Carlson (Doc. No. 67), Plaintiff's Objections to the Report and

Recommendation (Doc. No. 70), Defendant's Brief in Opposition to Plaintiff's Objections to the

Report and Recommendation (Doc. No. 71), Plaintiff's Reply to Defendant's Brief in Opposition

(Doc. No. 72), and in accordance with the Opinion of the Court issued this day, it is **ORDERED**

as follows:

1.      The Report and Recommendation of Magistrate Judge Carlson (Doc. No. 67) is
           **APPROVED** and **ADOPTED**.

2.      Defendant's Motion for Summary Judgment (Doc. No. 62) is **GRANTED**.

3.      Plaintiff's Motion for Judgment (Doc. No. 61) is **DENIED**.

4.      The Clerk of Court shall close this case for statistical purposes.


BY THE COURT:


JOEL H. SLOMSKY, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL V. PELLICANO,

          Plaintiff,

  v.

OFFICE OF PERSONNEL MANAGEMENT,
INSURANCE OPERATIONS,

          Defendant.

CIVIL ACTION
NO. 11-405

## OPINION

**Slomsky, J.**

**March 25, 2014**

## I.    INTRODUCTION

Before the Court is a request for judicial review of an administrative decision by the

Office of Personnel Management ("OPM" or "Defendant"), an agency of the federal

government. In 2008, pro se Plaintiff Michael Pellicano ("Plaintiff") purchased medical

equipment and sought reimbursement through his primary insurance provider. The provider

covered 65% of the cost, instead of the full 100% sought by Plaintiff. (Doc. No. 1 at 2.) As a

federal employee, Plaintiff is enrolled in a health benefits plan under the Federal Employees

Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901, et seq. In accordance with the FEHBA,

Plaintiff appealed his insurance provider's coverage decision to OPM. On February 22, 2010,

OPM decided that 65% coverage for the purchase of necessary medical equipment was

appropriate under Plaintiff's plan and concurred with his primary insurance provider's decision

1

to cover that amount. (Doc. No. 1 at 15.) OPM sent a letter to Plaintiff notifying him of the decision and advising him that if he disagreed with the decision then he "may file suit against [OPM] in [f]ederal court." (Id.)

On March 2, 2011, Plaintiff filed a Complaint against OPM in this Court, alleging that the agency had "breached fiduciary duties [and] was arbitrary and capricious in denying additional benefits." (Id. at 1.) Pursuant to M.D. Pa. Local Rule 73.1(d), the case was assigned to U.S. Magistrate Judge Martin C. Carlson and this Court. On November 22, 2011, OPM filed a motion to remand the proceedings to the administrative agency in order to develop a full and complete factual record. (Doc. No. 21.) After briefing, Judge Carlson issued a Report and Recommendation, recommending that the case be remanded to OPM for further proceedings. (Doc. No. 26.)

On April 12, 2012, over Plaintiff's objections, this Court adopted Judge Carlson's Report and Recommendation and remanded the case for further administrative proceedings. (Doc. No. 35.) On remand, OPM reaffirmed its initial decision to uphold the reimbursement of 65% of the cost of the durable medical equipment. With a more thorough administrative record, the case returned to this Court for review and was again referred to Judge Carlson. The parties then filed cross-motions for summary judgment on the administrative record.

On November 8, 2013, after reviewing OPM's extensive administrative record (Doc. No. 54), and the motions for summary judgment and supporting documents (Doc. Nos. 61-65), Judge Carlson issued a Report, recommending that Defendant's Motion for Summary Judgment be granted and Plaintiff's Motion for Summary Judgment be denied. (Doc. No. 67.) Plaintiff filed timely objections to the Magistrate Judge's Report and Recommendation, and those

2

objections are now before this Court for consideration.[1]

## II.   FACTUAL BACKGROUND

The following factual account is taken from the Magistrate Judge's Report and

Recommendation:

> The plaintiff, Mr. Pellicano, was an enrollee in the Service Benefit Plan (SBP), an federal employee health care benefit plan overseen by OPM under the Federal Employee Health Benefit Act, (FEHBA) 5 U.S.C. § 8901. (Doc. 54, OPM admin. Record, pp.1-1124) Sometime in 2008, Pellicano filed a prior approval request with the local Blue Cross Blue Shield (BCBS) Plan administering his benefit plan in Pennsylvania, Pennsylvania Blue Cross Blue Shield. In this request, Pellicano sought full reimbursement for payment of a specific piece of durable medical equipment, a device called a Functional Electrical Stimulation (FES) cycle ergonometer. (Id., p. 44,71-74.)

> This request then set in motion a protracted journey through various health care bureaucracies. At the outset, upon receipt of Pellicano's request the local Pennsylvania Blue Cross Blue Shield Plan determined that the provider for this particular piece of durable medical equipment was located in Baltimore, Maryland. Accordingly, Pennsylvania Blue Cross Blue Shield advised Pellicano to submit a prior approval request to CareFirst Blue Cross Blue Shield (CareFirst), which was responsible for such requests in Maryland. (Id.) Pellicano followed this direction and submitted a request for prior approval with CareFirst, which initially denied the claim as non-covered on January 26, 2009. (Id., p. 65.)

> Mr.[sic] Pellicano challenged this coverage determination in a letter dated March 6, 2009, and requested reconsideration of the carrier's denial of the claim. (Id., pp. 5557.) One month later, on April 7, 2009, CareFirst responded to Pellicano's request. In this response CareFirst explained that the claim had been processed

---

[1] For purposes of this Opinion, the Court has considered the Complaint (Doc. No. 1), Plaintiff's Motion for Judgment (Doc. No. 61), Defendant's Motion to Dismiss and for Summary Judgment (Doc. No. 62), Defendant's Statement of Facts in Support of the Motion for Judgment (Doc. No. 63), Defendant's Brief in Opposition to Plaintiff's Motion for Judgment (Doc. No. 64), Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss and for Summary Judgment (Doc. No. 65), the Report and Recommendation of United States Magistrate Judge Martin C. Carlson (Doc. No. 67), Plaintiff's Objections to the Report and Recommendation (Doc. No. 70), Defendant's Brief in Opposition to Plaintiff's Objections to the Report and Recommendation (Doc. No. 71), and Plaintiff's Reply to Defendant's Brief in Opposition. (Doc. No. 72.)

3

with an incorrect rejection code, stated that Medicare was Pellicano's primary insurer, informed Pellicano that his federal benefit plan provided secondary coverage, and advised Pellicano that "[y]ou must submit a claim for this charge to Medicare. After Medicare has paid, please send your claim for benefits to your Local Blue Cross and Blue Shield Plan or the Plan serving the area where the services were rendered." (Id. pp.58.)

Thus, CareFirst's April 2009 response directed Pellicano to take another bureaucratic journey: Specifically, to secure reimbursement Pellicano was required to first file an appeal with Medicare. If his appeal was denied by Medicare he was then permitted to appeal to the Blue Cross Blue Shield carrier as a secondary health insurer. (Id.) CareFirst then completed the bureaucratic process of addressing Pellicano's initial claim by reprocessing the claim under a new claim number and denying the claim for the correct reason. (Id., p. 66.)

Undeterred, Pellicano launched two parallel efforts to secure reimbursement of this medical expense. First, on or about July 6, 2009, Pellicano sought reconsideration of the denial of this claim. (Id., p.59.) In addition, Pellicano attempted to comply with the directions he received from CareFirst that he exhaust any claims first through Medicare, by submitting a Medicare denial benefit statement and Medicare appeal denial letter indicating that Medicare denied the claim for the this durable medical equipment. (Id., pp. 59-63.) This Medicare appeal decision found that the Functional Electrical Stimulation (FES) cycle ergonometer was not covered by Medicare because "the motorized cycle system [he] purchased is categorized as exercise equipment. Medicare does not provide reimbursement for equipment that is not primarily medical in nature." (Id., p. 61.)

On September 23, 2009, after considering information submitted by Pellicano and receiving requested medical documentation from Pellicano's medical providers, CareFirst issued its decision on reconsideration[,] finding that the Functional Electrical Stimulation (FES) cycle ergonometer met the criteria for covered durable medical equipment and was medically necessary for Pellicano's condition. (Id., pp. 2-4.) Accordingly, Pellicano was informed that the claim was found to be reimbursable but was advised that CareFirst would only pay the claim using 65% of the billed charge as the Plan allowance. (Id., p. 4.) This letter also stated that a check had been issued to Pellicano in the amount of $13,435.05 -- 65% of the billed amount -- and that Pellicano's total responsibility for the claim was $20,697.00. (Id.)

Dissatisfied with this decision, Pellicano filed an appeal of this decision with OPM on December 2, 2009. (Id., pp. 1-16.) In this appeal, Pellicano challenged the amount that was paid on the claim, specifically, disputing the decision to

4

allow reimbursement of only 65% of this equipment expense. (Id.) On appeal, Pellicano raised a twofold claim, arguing first that nothing in the health benefit plan justified a reduced 65% reimbursement rate for this expense. In addition, Pellicano provided redacted copies of two other redacted Explanation of Benefit (EOB) forms which appeared to have approved full reimbursement of similar devices in the past. (Id., pp.10, 12.) According to these copies, it appeared that the billed charge amount was the amount used as the Plan allowance, although the Explanations of Benefits letters did not reflect precisely what services or supplies were at issue on those specific claims. Nor did the forms explain the nature of the claimant's medical justification for this equipment. (Id.)

On December 29, 2009, [sic] CareFirst, in turn, provided OPM with an Explanation of Denial Report (EOD Report), explaining the history of this particular denied claim. (Id., pp. 43-48.) In this report, CareFirst explained that "[t]he Plan does not have an established allowance for the FES cycle ergometer and, a Medicare allowance was not available. Therefore, the default Medicare allowance was 60% of the billed charges. The Local Plan policy is to allow 65% of the charges, in the absence of an established allowance." (Id., p. 46.)

Having received this information from the carrier, on February 22, 2010, OPM issued a final agency decision which upheld the carrier's actions. (Id., p. 225.) In this decision OPM explained that the applicable provisions in the 2008 plan brochure relating to Mr. Pellicano contained a formula for calculating the Plan allowance that applied to physicians and other health care professionals that do not contract with the local Blue Cross Blue Shield Plan. This provision stated that the non-participating provider allowance generally is equal to "the greater of 1) the Medicare participating fee schedule amount for the service or supply in the geographic area in which it was performed or obtained (or 60% of the billed charge if there is no equivalent Medicare fee schedule amount) or 2) 100% of the 2008 Usual, Customary and Reasonable (UCR) amount for the service or supply in the geographic area in which it was performed or obtained." (Id., p. 1085.) However, according to OPM's February 2010 decision, "[t]here is not a [usual, customary and reasonable payment amount] UCR or Medicare fee schedule amount for the DME in question." Therefore, in the absence of either a set Medicare fee schedule or a usual, customary and reasonable payment amount for this particular equipment, OPM concluded that "CareFirst . . . policy is to provide benefits at 65 percent of the billed amount, when there is no established allowance." (Id., p. 225.)

OPM also addressed Mr. Pellicano's claims that the Plan brochure supported the use of 100% of the billed amount as the Plan allowance and his assertion that other plan members had received full reimbursement for similar equipment by explaining that "[t]here is not a UCR [usual, customary and reasonable payment

schedule] or Medicare fee schedule amount for the DME in question. Therefore, the Plan provided benefits as indicated above. Also we cannot direct the Plan to provide benefits based on information that you submitted of other BCBS enrollees. Our decision is based solely on the Plan's contract and its application to your disputed claim." (Id.)

Following the filing of this lawsuit, at OPM's request we remanded this matter to the agency for further consideration and fact-finding. On remand, OPM sought an additional report from the carrier, (id., pp. 1098-1100), and invited Mr. Pellicano to submit information relating to the issues on remand. Mr. Pellicano declined this request, (id., pp.1106-07), but CareFirst provided additional documentation which explained that:

> The Plan does not have a UCR for the FES cycle ergometer because it is considered to be exercise equipment and is therefore a non-covered item as described in the Service Benefit Plan brochure. When situations arise through the disputed claims process and individual consideration is given, the Plan must price the claim on an Individual Consideration (IC) basis, meaning local Plan policies determine, based on claims processing guidelines, the allowance for an item that is an exclusion of the policy; this is called IC pricing. For the 2008 benefit period IC pricing was 65% of the billed amount of a provider's service. Because the provider is non-participating with the Plan, this amount was then compared to the Medicare Fee Schedule, or 60% of the billed amount in the absence of a Medicare Fee Schedule amount. For the item in dispute, there is no Medicare Fee Schedule amount, because they also consider this a non-covered item. Therefore, within the non-participating provider allowance guidelines, 65% of the billed amount is greater than 60% of the billed amount. Thus the Plan utilized 65% of the billed amount for processing purposes. A copy of the Plan's policy for 2008 IC Pricing has been included.

(Id., pp.1112-1113.)

With respect to the redacted Explanation of Benefit forms submitted with Pellicano's appeal, the CareFirst explained that:

> It is not possible for the Plan to determine whether the other Explanations of Benefits (EOBs) referenced by the member, one for services in 2008 and one for services in 2006, for other members were for the same type of DME. Without the member identification numbers and/or claim numbers we cannot make this

> determination. In addition, if the equipment is the same reimbursement was made in error and allowing the charges at 100% of the billed amount was done in error and was not in accordance with the IC pricing policies for 2008.

(Id., p.1113.)

The carrier also provided OPM a copy of the referenced Plan policy for 2008 Individual Consideration (IC) pricing, which stated that for durable medical equipment acquired prior to 2011, "the allowance for the procedure code should be 65% of the charge. . . ." (Id., pp. 1116-1117.)

On July 24, 2012, OPM issued a revised final agency decision in this matter, reaffirming its prior decision that the carrier correctly used 65% of the billed charge as the payment for the durable medical equipment in question. (Id., pp. 1119-1124.) In its July 2012 decision, OPM explained that:

> The Plan does not have an established UCR for the FES cycle ergometer because it is non-covered exercise equipment. When these cases are disputed, and individual consideration is given, the Plan prices the claim on an Individual Consideration (IC) basis using the CareFirst Plan's policy for determining the allowance. For 2008, the IC pricing was 65% of the charge, or $13,453.05. This pricing policy was effective since 2002, until it was revised for 2011. This amount was compared to 60% of the billed charge, or $12,418.20, since there is no Medicare Fee Schedule MFS amount for the equipment, to determine the NPA. Based on this comparison, the NPA was 65% of the billed charge since it is greater than 60%. The Plan provided benefits at 100% of the NPA, instead of 75%, because the coinsurance is waived when Medicare Part B is the primary payer as indicated on page 111 of the BCBS Service Benefit Plan brochure. You are responsible for the difference between the Plan allowance and billed amount as indicated on page 43 of the 2008 brochure. Copies of the applicable 2008 BCBS brochure pages are enclosed.

(Id.)

The OPM July 2012 decision letter went on to address Pellicano's contention that other plan members had received full reimbursement of these expenses, stating:

> The CareFirst Plan indicated it is not possible to determine whether the 2006 and 2008 claims for other members were for the same

7

> type of equipment. The CareFirst Plan could not make the
> determination without member identification numbers and/or claim
> numbers. Additionally, if the equipment is the same, the payment
> of 100% of the billed charge was made in error and was not in
> accordance with the Care first Plan's IC pricing policy for 2008.

(Id., pp. 1119-1120.)

(Doc. No. 67 at 3-11.)

## III.   STANDARD OF REVIEW

The Federal Employee Health Benefit Act ("FEHBA"), 5 U.S.C. § 8901, et seq., governs

health benefit claims made by and for federal employees. The United States Supreme Court has

determined that "FEHBA's . . . jurisdictional provision vests federal district courts with 'original

jurisdiction . . . of a civil action or claim against the United States.'" Empire Healthchoice

Assur., Inc. v. McVeigh, 547 U.S. 677, 677 (2006) (quoting 5 U.S.C. § 8912).

Under the FEHBA regulations, the scope of judicial review of an action brought against

OPM "will be limited to the record that was before OPM when it rendered its decision . . . ."

5 C.F.R. § 890.107(d)(1). Because OPM's decision is a final agency decision, judicial review of

the record before OPM is further governed by the Administrative Procedure Act ("APA"),

5 U.S.C. § 706. Pursuant to the APA, an agency decision is reviewed under an arbitrary and

capricious standard.  5 U.S.C. § 706(2)(A).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge

may designate a magistrate judge to file proposed findings and recommendations. Here, in order

to determine whether OPM's action was arbitrary and capricious, Magistrate Judge Carlson

asked the parties to file cross-motions for summary judgment. Summary judgment is appropriate

"if the movant shows that there is no genuine dispute as to any material fact and the movant is

8

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013). "When confronted with cross-motions for summary judgment . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" Transguard Ins. Co. of Am., Inc. v. Hinchey, 464 F.Supp.2d 425, 430 (M.D.Pa. 2006) (quoting Marciniak v. Prudential Fin. Ins. Co. of Am., 184 F. App'x 266, 270 (3d Cir. 2006)). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." Id. (citing Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998)).

Any party may file written objections in response to the findings of a Report and Recommendation. Id. § 636(b)(1)(C). In the Middle District of Pennsylvania, Local Rule 72.3 governs Plaintiff's objections to the Magistrate Judge's Report and Recommendation. Under this Rule, Plaintiff "shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." Local R. Civ. P. 72.3.

Once objections are filed, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The judge] may accept, reject, or modify, in whole or in part, the findings or

9

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Third Circuit

has "assumed that the normal practice of the district judge is to give some reasoned consideration

to the magistrate [judge's] report before adopting it as the decision of the court." Henderson v.

Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also Bolt v. Strada, No.12-1599, 2013 WL

4500466, at *1 (M.D. Pa. Aug. 21, 2013).

Pursuant to FEHBA and the Administrative Procedure Act, Judge Carlson's review of the

motions for summary judgment was limited to the record before OPM when it reached its final

decision upholding the partial denial of Plaintiff's claim. Judge Carlson reviewed the motions

and the record below in order to determine if OPM's actions were arbitrary and capricious. He

found that they were not, and he recommended that this Court grant Defendant's motion for

summary judgment and deny Plaintiff's motion. This Court has undertaken a de novo review of

Plaintiff's objections and for the following reasons will overrule the objections and adopt Judge

Carlson's Report and Recommendation.

## IV.   PLAINTIFF'S OBJECTIONS TO THE FACTUAL FINDINGS OF THE MAGISTRATE JUDGE ARE WITHOUT MERIT, AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WILL BE GRANTED

Here, Plaintiff asserts five objections to the Report and Recommendation, but only three

merit review under the standards of Local Rule 72.3 and 28 U.S.C. § 636. Accordingly, the

Court will only examine Plaintiff's First, Third and Fifth Objections.[3] All of these objections

---

[3] In ruling on objections to a report and recommendation, a court reviews de novo only the
findings of the Report and Recommendation to which Petitioner specifically objects. A court
will not consider arguments repeated from previous filings. 28 U.S.C. § 636(b)(1); Fed. R.
Civ. P. 72(b)(3); Reid v. Lawler, No. 08-5674, 2010 WL 1186320, at *3 (E.D. Pa. Mar. 25,
2010) (stating "this Court reviews de novo only the findings of the [Report and

relate to the thorough factual findings made by the Magistrate Judge. In his First Objection,

Plaintiff objects to the characterization that he "did not dispute the accuracy" of Defendant's

proposed statement of facts, and therefore was deemed to have admitted those facts. In his Third

Objection, Plaintiff disagrees with Report's characterization of when certain evidence was

produced. He also argues that this evidence, a 2008 CareFirst policy, should not have been

included in the record below. Finally, in his Fifth Objection he challenges the characterization

that "Pennsylvania Blue Cross Blue Shield advised [him] to submit a prior approval request to

CareFirst BlueCross BlueShield. . . ." Each objection will be discussed seriatim.

  The Report and Recommendation states that its factual findings "are derived, in part,

from the statement of undisputed material facts tendered by the defendants, to the extent that

those facts have been found to be fully supported by the agency administrative record." (Doc.

No. 67 at 3, n.1) It goes on to state that because "[Plaintiff] has not disputed the accuracy of

[Defendant's] statement of facts, [under] Local Rule 5.1, [he] is deemed to [have] admit[ted]

these facts. . . ." (Id.) In his First Objection, Plaintiff argues that he did dispute Defendant's

statement of facts in both his Motion for Judgment (Doc. No. 61) and his Brief in Opposition to

Recommendation] that Petitioner specifically objects to" and declines to review arguments that
"are essentially a repetition of the arguments set forth in Petitioner's habeas petition[.]").

Here, in his Fourth Objection, Plaintiff renews his claim that 100% of his costs should have
been covered by his policy because CareFirst covered the full cost of ergometers for prior
enrollees. In his Second Objection, he continues to object to the fact that he was not allowed
discovery during the remand proceeding and that he is not allowed to supplement the current
record with outside documents. Because these objections are repetitions of arguments made in
both his Complaint and his Objections to Judge Carlson's Report and Recommendation
concerning remand, they are not specific objections to the current Report and Recommendation
and the Court need not reconsider them.

11

Defendant's Motion for Summary Judgment (Doc. No. 65).

Plaintiff does oppose Defendant's statement of facts in these two motions, and he offers his own version of events to counter several specific details. (Doc. Nos. 61 at 2, 65 at 2.) However, the facts submitted by Plaintiff do not raise a genuine issue of material fact. First, they are not supported by evidence in the administrative record and are therefore not "genuine." Kaucher, 455 F.3d at 423 (citing Anderson, 477 U.S. at 248.) (A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.). In addition, they do not "have the potential to alter the outcome of the case" and are therefore not "material" to the disposition of the case. Favata, 511 App'x at 158. For example, Plaintiff objects to the following statement in Defendant's Statement of Facts: "It is not clear from the record exactly when the prior approval request was submitted, but it appears to have been in December 2008. See OPM 71-74." His lengthy counter-statement to this fact is that he submitted the prior approval request in January 2008, not December 2008. This factual statement is unsupported by the record, but even if it were supported, it is not substantial enough to alter the outcome of the case. Therefore, this fact is neither genuine nor material.

Notably, the Magistrate Judge did not adopt Defendant's undisputed statement of facts in its entirety, but undertook a search of the administrative record, totaling more than 1,000 pages, and adopted only those portions of the facts that were supported by the record. This Court adopts the Magistrate Judge's findings of fact and Plaintiff's First Objection is overruled.

Plaintiff's Third Objection is to the introduction of CareFirst's 2008 policy on individual pricing consideration. The policy states that "for durable medical [equipment] acquired prior to 2011, the allowance for the procedure code should be 65% of the charge. . . ." (Doc. No. 67 at

12

10.) Plaintiff contends that CareFirst provided the 2008 policy to OPM later in the administrative review proceedings than the Magistrate Judge implied. Also, Plaintiff contends that the Magistrate Judge should not have considered this document because it is "self-serving and clearly generated after the fact." (Doc. No. 70 at 6.)

First, the fact that the 2008 policy may have been turned over later in the remand process is not substantial enough to alter the outcome of this case. This document was turned over prior to the administrative agency's revised agency decision on July 24, 2012. Therefore, the document is properly a part of the record in this case, and the Magistrate Judge was obligated to review it. Second, there is no evidence to support the notion that this document is inauthentic. Therefore, Plaintiff's Third Objection is overruled.

Plaintiff's Fifth Objection relates to the assertion that "Pennsylvania Blue Cross Blue Shield advised [him] to submit a prior approval request to CareFirst BlueCross BlueShield. . . ." He argues that Blue Cross Blue Shield never advised him to submit the prior approval request, although he admits that he ultimately did send the request to CareFirst. Like the statements asserted in Plaintiff's other objections, this statement is not supported by the record and, even if it was, it does not amount to a genuine issue of material fact. Accordingly, his Fifth Objection is overruled.

## V.   CONCLUSION

For the foregoing reasons, the Court will adopt and approve Magistrate Judge Carlson's Report and Recommendation (Doc. No. 67), grant OPM's Motion for Summary Judgment (Doc. No. 62) and deny Plaintiff's Motion for Judgment (Doc. No. 61). An appropriate Order follows.