IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL V. PELLICANO,

Plaintiff,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Defendant.

CIVIL ACTION
NO. 11-405

## OPINION

**Slomsky, J.**

**July 18, 2014**

## I.   INTRODUCTION

Before the Court is a Motion for Reconsideration ("Motion") filed by pro se Plaintiff
Michael Pellicano ("Plaintiff"). (Doc. No. 81.) Plaintiff asks this Court to reconsider its March
26, 2014 Order ("Order") (Doc No. 73), adopting the Report and Recommendation of Magistrate
Judge Carlson (Doc. No. 67), and granting the Office of Personnel Management's ("OPM's" or
"Defendant's") Motion for Summary Judgment. (Doc. No. 62.) Plaintiff argues that his Motion
should be granted in order to prevent manifest injustice. Defendant submits that Plaintiff fails to
establish a valid reason to support his request for reconsideration. The Court agrees with
Defendant. For reasons that follow, Plaintiff's Motion for Reconsideration (Doc. No. 81) will be
denied.

## II.   BACKGROUND

The following statement of facts, adopted by this Court in the Order, is taken from the
Magistrate Judge's Report and Recommendation:

The plaintiff, Mr. Pellicano, was an enrollee in the Service Benefit Plan (SBP), an [sic] federal employee health care benefit plan overseen by OPM under the Federal Employee Health Benefit Act, (FEHBA) 5 U.S.C. § 8901. (Doc. 54, OPM admin. Record, pp.1-1124) Sometime in 2008, Pellicano filed a prior approval request with the local Blue Cross Blue Shield (BCBS) Plan administering his benefit plan in Pennsylvania, Pennsylvania Blue Cross Blue Shield. In this request, Pellicano sought full reimbursement for payment of a specific piece of durable medical equipment, a device called a Functional Electrical Stimulation (FES) cycle ergonometer. (Id., p. 44, 71-74.)

This request then set in motion a protracted journey through various health care bureaucracies. At the outset, upon receipt of Pellicano's request the local Pennsylvania Blue Cross Blue Shield Plan determined that the provider for this particular piece of durable medical equipment was located in Baltimore, Maryland. Accordingly, Pennsylvania Blue Cross Blue Shield advised Pellicano to submit a prior approval request to CareFirst Blue Cross Blue Shield (CareFirst), which was responsible for such requests in Maryland. (Id.) Pellicano followed this direction and submitted a request for prior approval with CareFirst, which initially denied the claim as non-covered on January 26, 2009. (Id., p. 65.)

[Mr.] Pellicano challenged this coverage determination in a letter dated March 6, 2009, and requested reconsideration of the carrier's denial of the claim. [Id., pp. 55-57.] One month later, on April 7, 2009, CareFirst responded to Pellicano's request. In this response CareFirst explained that the claim had been processed with an incorrect rejection code, stated that Medicare was Pellicano's primary insurer, informed Pellicano that his federal benefit plan provided secondary coverage, and advised Pellicano that "[y]ou must submit a claim for this charge to Medicare. After Medicare has paid, please send your claim for benefits to your Local Blue Cross and Blue Shield Plan or the Plan serving the area where the services were rendered." (Id. pp.58.)

Thus, CareFirst's April 2009 response directed Pellicano to take another bureaucratic journey[.] Specifically, to secure reimbursement Pellicano was required to first file an appeal with Medicare. If his appeal was denied by Medicare he was then permitted to appeal to the Blue Cross Blue Shield carrier as a secondary health insurer. (Id.) CareFirst then completed the bureaucratic process of addressing Pellicano's initial claim by reprocessing the claim under a new claim number and denying the claim for the correct reason. (Id., p. 66.)

Undeterred, Pellicano launched two parallel efforts to secure reimbursement of this medical expense. First, on or about July 6, 2009, Pellicano sought reconsideration of the denial of this claim. (Id., p. 59.) In addition, Pellicano attempted to comply with the directions he received from CareFirst that he exhaust any claims first through Medicare, by submitting a Medicare denial benefit statement and Medicare appeal denial letter indicating that Medicare denied the claim for the this [sic] durable medical equipment. (Id., pp. 59-63.)

This Medicare appeal decision found that the Functional Electrical Stimulation (FES) cycle ergonometer was not covered by Medicare because "the motorized cycle system [he] purchased is categorized as exercise equipment. Medicare does not provide reimbursement for equipment that is not primarily medical in nature." (Id., p. 61.)

On September 23, 2009, after considering information submitted by Pellicano and receiving requested medical documentation from Pellicano's medical providers, CareFirst issued its decision on reconsideration[,] finding that the Functional Electrical Stimulation (FES) cycle ergonometer met the criteria for covered durable medical equipment and was medically necessary for Pellicano's condition. (Id., pp. 2-4.) Accordingly, Pellicano was informed that the claim was found to be reimbursable but was advised that CareFirst would only pay the claim using 65% of the billed charge as the Plan allowance. (Id., p. 4.) This letter also stated that a check had been issued to Pellicano in the amount of $13,435.05 -- 65% of the billed amount -- and that Pellicano's total responsibility for the claim was $20,697.00. (Id.)

Dissatisfied with this decision, Pellicano filed an appeal of this decision with OPM on December 2, 2009. (Id., pp. 1-16.) In this appeal, Pellicano challenged the amount that was paid on the claim, specifically, disputing the decision to allow reimbursement of only 65% of this equipment expense. (Id.) On appeal, Pellicano raised a twofold claim, arguing first that nothing in the health benefit plan justified a reduced 65% reimbursement rate for this expense. In addition, Pellicano provided redacted copies of two other redacted Explanation of Benefit (EOB) forms which appeared to have approved full reimbursement of similar devices in the past. (Id., pp. 10, 12.) According to these copies, it appeared that the billed charge amount was the amount used as the Plan allowance, although the Explanations of Benefits letters did not reflect precisely what services or supplies were at issue on those specific claims. Nor did the forms explain the nature of the claimant's medical justification for this equipment. (Id.)

On December 29, 2009, the [sic] CareFirst, in turn, provided OPM with an Explanation of Denial Report (EOD Report), explaining the history of this particular denied claim. (Id., pp. 43-48.) In this report, CareFirst explained that "[t]he Plan does not have an established allowance for the FES cycle ergometer and, a Medicare allowance was not available. Therefore, the default Medicare allowance was 60% of the billed charges. The Local Plan policy is to allow 65% of the charges, in the absence of an established allowance." (Id., p. 46.)

Having received this information from the carrier, on February 22, 2010, OPM issued a final agency decision which upheld the carrier's actions. (Id., p. 225.) In this decision OPM explained that the applicable provisions in the 2008 plan brochure relating to Mr. Pellicano contained a formula for calculating the [p]lan allowance that applied to physicians and other health care professionals that do not contract with the local Blue Cross Blue Shield Plan. This provision stated that

the non-participating provider allowance generally is equal to "the greater of 1) the Medicare participating fee schedule amount for the service or supply in the geographic area in which it was performed or obtained (or 60% of the billed charge if there is no equivalent Medicare fee schedule amount) or 2) 100% of the 2008 Usual, Customary and Reasonable (UCR) amount for the service or supply in the geographic area in which it was performed or obtained." (Id., p. 1085.) However, according to OPM's February 2010 decision, "[t]here is not a [usual, customary and reasonable payment amount] UCR or Medicare fee schedule amount for the DME in question." Therefore, in the absence of either a set Medicare fee schedule or a usual, customary and reasonable payment amount for this particular equipment, OPM concluded that "CareFirst . . . policy is to provide benefits at 65 percent of the billed amount, when there is no established allowance." (Id., p. 225.)

OPM also addressed Mr. Pellicano's claims that the Plan brochure supported the use of 100% of the billed amount as the Plan allowance and his assertion that other plan members had received full reimbursement for similar equipment by explaining that "[t]here is not a UCR [usual, customary and reasonable payment schedule] or Medicare fee schedule amount for the DME in question. Therefore, the Plan provided benefits as indicated above. Also we cannot direct the Plan to provide benefits based on information that you submitted of other BCBS enrollees. Our decision is based solely on the Plan's contract and its application to your disputed claim." (Id.)

Following the filing of this lawsuit, at OPM's request we remanded this matter to the agency for further consideration and fact-finding. On remand, OPM sought an additional report from the carrier, (id., pp. 1098-1100), and invited Mr. Pellicano to submit information relating to the issues on remand. Mr. Pellicano declined this request, (id., pp.1106-07), but CareFirst provided additional documentation which explained that:

> The Plan does not have a UCR for the FES cycle ergometer because it is considered to be exercise equipment and is therefore a non-covered item as described in the Service Benefit Plan brochure. When situations arise through the disputed claims process and individual consideration is given, the Plan must price the claim on an Individual Consideration (IC) basis, meaning local Plan policies determine, based on claims processing guidelines, the allowance for an item that is an exclusion of the policy; this is called IC pricing. For the 2008 benefit period IC pricing was 65% of the billed amount of a provider's service. Because the provider is non-participating with the Plan, this amount was then compared to the Medicare Fee Schedule, or 60% of the billed amount in the absence of a Medicare Fee Schedule amount. For the item in dispute, there is no Medicare Fee Schedule amount, because they also consider this a non-covered item. Therefore, within the non-

4

> participating provider allowance guidelines, 65% of the billed
> amount is greater than 60% of the billed amount. Thus the Plan
> utilized 65% of the billed amount for processing purposes. A copy
> of the Plan's policy for 2008 IC Pricing has been included.

[Id., pp.1112-13.]

With respect to the redacted Explanation of Benefit forms submitted with
Pellicano's appeal, the CareFirst explained that:

> It is not possible for the Plan to determine whether the other
> Explanations of Benefits (EOBs) referenced by the member, one
> for services in 2008 and one for services in 2006, for other
> members were for the same type of DME. Without the member
> identification numbers and/or claim numbers we cannot make this
> determination.    In addition, if the equipment is the same
> reimbursement was made in error and allowing the charges at
> 100% of the billed amount was done in error and was not in
> accordance with the IC pricing policies for 2008.

(Id., p. 1113.)

The carrier also provided OPM a copy of the referenced Plan policy for 2008
Individual Consideration (IC) pricing, which stated that for durable medical
equipment acquired prior to 2011, "the allowance for the procedure code should
be 65% of the charge. . . ." [Id., pp. 1116-17.]

On July 24, 2012, OPM issued a revised final agency decision in this matter,
reaffirming its prior decision that the carrier correctly used 65% of the billed
charge as the payment for the durable medical equipment in question. [Id., pp.
1119-24.] In its July 2012 decision, OPM explained that:

> The Plan does not have an established UCR for the FES cycle
> ergometer because it is non-covered exercise equipment. When
> these cases are disputed, and individual consideration is given, the
> Plan prices the claim on an Individual Consideration (IC) basis
> using the CareFirst Plan's policy for determining the allowance.
> For 2008, the IC pricing was 65% of the charge, or $13,453.05.
> This pricing policy was effective since 2002, until it was revised
> for 2011. This amount was compared to 60% of the billed charge,
> or $12,418.20, since there is no Medicare Fee Schedule MFS
> amount for the equipment, to determine the NPA. Based on this
> comparison, the NPA was 65% of the billed charge since it is
> greater than 60%. The Plan provided benefits at 100% of the NPA,
> instead of 75%, because the coinsurance is waived when Medicare
> Part B is the primary payer as indicated on page 111 of the BCBS

5

> Service Benefit Plan brochure. You are responsible for the
> difference between the Plan allowance and billed amount as
> indicated on page 43 of the 2008 brochure. Copies of the
> applicable 2008 BCBS brochure pages are enclosed.

(Id.)

The OPM July 2012 decision letter went on to address Pellicano's contention that
other plan members had received full reimbursement of these expenses, stating:

> The CareFirst Plan indicated it is not possible to determine whether
> the 2006 and 2008 claims for other members were for the same
> type of equipment. The CareFirst Plan could not make the
> determination without member identification numbers and/or claim
> numbers. Additionally, if the equipment is the same, the payment
> of 100% of the billed charge was made in error and was not in
> accordance with the Care first [sic] Plan's IC pricing policy for
> 2008.

[Id., pp. 1119-20.]

(Doc. No. 67 at 3-11.)

## III.  STANDARD OF REVIEW

"[F]ederal courts have a strong interest in the finality of judgments," and therefore grant

motions for consideration sparingly. Continental Cas. Co. v. Diversified Indus., 884 F. Supp.

937, 943 (E.D. Pa. 1995). Where the movant is "ask[ing] the Court to rethink what [it] had

already thought through," reconsideration will be denied. Glendon Energy Co. v. Bor. of

Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (citation and internal quotation marks

omitted). Similarly, this Court has consistently held that "mere dissatisfaction with the Court's

ruling is not a proper basis for reconsideration." Boardakan Rest. LLC v. Atl. Pier Assocs., LLC,

No. 11-5676, 2013 WL 5468264 (E.D. Pa. Oct. 2, 2013) (internal citation and quotation marks

omitted).

A motion for reconsideration will only be granted on one of three grounds: 1) there has

been an intervening change in controlling law; 2) new evidence, which was not previously

6

available, has become available; or 3) it is necessary to correct a clear error of law or to prevent manifest injustice.  Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 399 (E.D. Pa. 2002) (quoting Smith v. City of Chester, 155 F.R.D. 95, 96–97 (E.D. Pa. 1994)).

A motion for reconsideration "addresses only factual and legal matters that the court may have overlooked."  Glendon Energy Co., 836 F. Supp. at 1122.  "When a motion for reconsideration raises only a party's disagreement with a decision of the court, that dispute should be dealt with in the normal appellate process, not on a motion for reargument."  Database Am., Inc. v. Bellsouth Adver. & Pub. Corp., 825 F. Supp. 1216, 1220 (D.N.J. 1993) (citing Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 163 (D.N.J.1988)) (internal quotation marks omitted).

## IV.    PLAINTIFF'S MOTION FOR RECONSIDERATION WILL BE DENIED

Here, Plaintiff argues that his Motion for Reconsideration should be granted in order to prevent manifest injustice.[1]  (Doc. No. 81 at 15.)  A "manifest injustice" is "an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds."  Black's Law Dictionary 982 (8th ed. 2007).  To prove that a manifest injustice exists, the moving party is required to show that the perceived injustice is clearly apparent to the point where it is nearly incontrovertible.  See Pac. Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 785 (Fed. Cl. 2006).  This is a heavy burden, requiring the movant to show that the record is "so patently unfair and tainted that the error is manifestly clear to all who view it."  Teri Woods Pub., L.L.C. v. Williams, No. 12-

---

[1] Plaintiff does not argue that there has been a change in the controlling law, nor has he submitted new evidence.  Consequently, the first and second grounds for reconsideration will not be considered.

04854, 2013 WL 6388560 (E.D. Pa. Dec. 6, 2013) (citing In re Titus, 479 B.R. 362, 367–68

(Bankr.W.D. Pa. 2012)).

Plaintiff argues that the Court's Order was based on several factual errors that must be

corrected in order to prevent injustice. Specifically, the errors alleged by Plaintiff include:

1) OPM's failure to obtain all relevant documents before making its final decision; 2) the fact

that OPM's final decision relied on CareFirst's 2008 pricing policy; and 3) the lack of deference

to the other EOBs in the record. (Doc. No. 81.) Further, Plaintiff argues that if the Court denies

his Motion, then the Court should grant him discovery. (Id. at 15.) Each of Plaintiff's arguments

will be discussed in turn. [2]

---

[2] In addition to the more substantive factual disputes, Plaintiff's Motion also takes issue with the characterization of OPM's February 22, 2010 decision as "final" and Plaintiff's December 17, 2008 request for reimbursement as a "prior approval request." These issues were disposed of by this Court as noted in the Opinions below:

> Pursuant to the FEHBA regulations, all responses by OPM to a request to review a decision by a primary service provider constitute "final decisions." 5 C.F.R. §§ 890.104(d)-(e). To the extent Plaintiffs objection to the term "initial" is correct, the Court will sustain the objection.

> However, using the term "initial" does not change the Court's reasoning on the outcome of the case. See e.g., Ryan v. United States, No. 10-1425, 2010 WL 3516840, at *2 (M.D. Pa. Aug. 10, 2010).

(Doc No. 35 at 7-8.)

> [Plaintiff] argues that Blue Cross Blue Shield never advised him to submit the prior approval request, although he admits that he ultimately did send the request to CareFirst. Like the statements asserted in Plaintiff's other objections, this statement is not supported by the record and, even if it was, it does not amount to a genuine issue of material fact.

(Doc. No. 73 at 13.)

**A. The Record Relied Upon By OPM For Its Final Decision Includes The Documents Plaintiff Claims Are Necessary For The Agency To Make a Proper Decision**

Plaintiff's first argument, that OPM "acted irrationally" when conducting the 2009 administrative review because it failed to obtain the 2008 pricing policy or the EOBs showing higher payouts to other plan members, has already been considered by this Court. (Doc. No. 84 at 2.) In fact, upon initial review of this case, the Court agreed that the record below was incomplete and remanded the matter back to OPM "for further administrative proceedings and the development of a full and complete record of its decision." (Doc. No. 21 at 3.) Yet, paradoxically, Plaintiff argues that the decision to remand "was based on erroneous conclusions," and "clearly biased and arbitrary." (Doc. No. 81 at 12.)

In order to adequately review an agency's decision, a court must have the full and complete administrative record at its disposal. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 94 (1943) ("The courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review."). Moreover, the Federal Employee Health Benefit Act limits the scope of judicial review of an action brought against OPM "to the record that was before OPM when it rendered its decision . . . ." 5 C.F.R. § 890.107(d)(1). "[T]he process of review requires that the grounds upon which the administrative agency acted b[e] clearly disclosed and adequately sustained." Chenery Corp., 318 U.S. at 94. The 2008 pricing policy that Plaintiff claims was crucial to determining his plan allowance was included in the BCBS Service Benefit Plan and was made part of the record during OPM's July 24, 2012 final administrative review. (Doc. No. 54-9 at 965-1096.) The 2006 and 2008 EOBs of other

---

Because the Court has previously addressed these two issues, and because their resolution has no bearing on the outcome of this case, Plaintiff has not established that a reconsideration of these issues would prevent manifest injustice.

plan members were also a part of the record and were considered by OPM in their final decision. (Doc. No. 54-10 at 1113.)

Thus, Plaintiff has failed to establish that reconsideration of this issue would prevent manifest injustice. Indeed, as noted above, the Court has cured the issue of an incomplete record by ordering further fact gathering and administrative review. Accordingly, this issue does not warrant reconsideration.

## B. The 2008 CareFirst Policy Was Properly Part Of The Record Below

Next, Plaintiff argues that OPM's 2012 decision should not have relied on CareFirst's 2008 policy because it is "self-serving" and "generated after the fact." (Doc. No. 81 at 8.) Plaintiff challenges the authenticity of the policy because it was not made part of the record until 2011. To prevent manifest injustice, according to Plaintiff, the record should be reconsidered without the policy. Again, the Court has already addressed this issue thoroughly in its most recent Opinion on the matter, stating:

> First, the fact that the 2008 policy may have been turned over later in the remand process is not substantial enough to alter the outcome of this case. This document was turned over prior to the administrative agency's revised agency decision on July 24, 2012. Therefore, the document is properly a part of the record in this case, and the Magistrate Judge was obligated to review it. Second, there is no evidence to support the notion that this document is inauthentic.

(Doc. No. 73 at 13.)

Presently, Plaintiff offers no evidence, new or otherwise, that would indicate that the policy in the record is not an accurate copy of the 2008 policy. Plaintiff fails to establish that yet another review of this issue would prevent manifest injustice. Furthermore, this issue will not be reconsidered because it is clear that Plaintiff is "ask[ing] the Court to rethink what [it] had

10

already thought through. . .". <u>Glendon Energy Co.</u>, 836 F. Supp. at 1122 (citation and internal quotation marks omitted).

### C. The Evidence Of Other Plan Member Benefits Was Properly Considered

Plaintiff also argues that the Court should reconsider its Order and review the 2006 and

2008 EOBs that were part of the record, as well as the letter from Restorative Therapies Inc.

("RTI")—the company that sold the equipment to Plaintiff— which was not part of the record.

These claims have also been dealt with in prior proceedings.

Defendant, in its final decision, considered the redacted EOBs that Plaintiff submitted.  In

fact, OPM sought remand "to seek further clarification from the carrier regarding the redacted

EOBs."  (Doc. No. 64 at 4.)  Defendant was informed by BCBS that:

> The CareFirst Plan indicated it is not possible to determine whether
> the 2006 and 2008 claims for other members were for the same
> type of equipment.  The CareFirst Plan could not make the
> determination without member identification numbers and/or claim
> numbers.  Additionally, if the equipment is the same, the payment
> of 100% of the billed charge was made in error and was not in
> accordance with the Care first [sic] Plan's IC pricing policy for
> 2008.

(Doc. No. 67 at 9.)

The RTI letter, however, was sent to Plaintiff and, therefore, outside the record before

OPM and not subject to review by the agency or the Court.

On this issue, as with the others, Plaintiff has not shown that the record that is "patently

unfair and tainted with error," but rather he is again "ask[ing] the Court to rethink what [it] had

already thought through." <u>Teri Woods Pub., L.L.C.</u>, 2013 WL 6388560; <u>Glendon Energy Co.</u>,

836 F. Supp. 1122 (citation and internal quotation marks omitted).  Consequently, Plaintiff has

failed to demonstrate the necessity for reconsideration of this issue.

### D. Plaintiff Is Not Entitled To Discovery, Which Was Properly Denied

Finally, Plaintiff claims that if this Court fails to grant his Motion for Reconsideration, then the Court must grant Plaintiff discovery. Plaintiff asseverates that further discovery is necessary to correct errors in the record, as well as to prevent manifest injustice. Plaintiff argues that OPM did not provide the full factual record. (Doc. No. 81 at 14.) To illustrate his point, Plaintiff expounds a slew of e-mail, testimony, faxes, and congressional inquiries that are absent from the record.

As Defendant has correctly reasoned, "[Plaintiff] has no right to discovery in this case. An action brought against OPM to recover on a claim for health benefits is limited to the record that was before OPM when it rendered its decision." (Doc. No. 71) (citing 5 C.F.R. 890.107(d)(3)).

Plaintiff was provided with a copy of the record that OPM compiled in making its decision, rendering his request for discovery moot. The Third Circuit has already made clear that "in an action challenging administrative action under the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq., the administrative record ordinarily cannot be supplemented." NVE, Inc. v. Dep't of Health and Human Servs., 436 F.3d 182, 189 (3d Cir. 2006) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973)) (internal quotation marks omitted).

Where the agency's decision is challenged based on the arbitrary and capricious standard of review, such as here, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Id. Accordingly, Plaintiff is not entitled to discovery.

### V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration will be denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL V. PELLICANO,

                Plaintiff,

    v.

OFFICE OF PERSONNEL MANAGEMENT,
INSURANCE OPERATIONS,

                Defendant.

CIVIL ACTION
NO. 11-405

## ORDER

**AND NOW**, this 18th day of July 2014, upon consideration of Plaintiff's Motion for

Reconsideration (Doc. No. 81), Defendant's Brief in Opposition (Doc. No. 82), Plaintiff's Reply

(Doc. No. 84), and in accordance with the Opinion issued this day, it **ORDERED** that Plaintiff's

Motion for Reconsideration (Doc. No. 81) is **DENIED**.

BY THE COURT:

JOEL H. SLOMSKY, J.